**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
JAY A. BERNSTEIN,                                   :
                                                    :
                              Plaintiff,            :
                                                    :     06 Civ. 895 (RMB)
              -against-                              :
                                                    :     **DECISION AND ORDER**
THE CITY OF NEW YORK, et al.,                       :
                                                    :
                              Defendants.           :
-------------------------------------------------------------x

**I.     Background**

On or about April 7, 2006, Jay A. Bernstein ("Plaintiff" or "Bernstein"), proceeding <u>pro se</u>, filed an Amended Complaint against the City of New York (the "City"), Commissioner Raymond W. Kelly ("Raymond Kelly"), Police Officer Martin Dunn ("Dunn"), "Michael L. Kelly a/k/a Carlos Gonzalez" ("Michael Kelly"), Robert J. Callahan ("Callahan"), Assistant District Attorney Katherine McGerald ("McGerald"), Anthony P. Leichter ("Leichter"), John Doe, Benjamin Mohamed Meherez ("Meherez"), Veronica Treston ("Treston"), Pamela's Cafe Inc., Pamela's Canteena, Mercer Square LLC ("Mercer Square"), BJ One West 3rd Inc., Nana Zena Inc., and Veronica and Mickey Inc. (collectively, "Defendants"), claiming that as a result of an alleged false arrest of Plaintiff on or about December 30, 2002, for setting a fire, and Plaintiff's detention and prosecution for third-degree arson (a class C felony) under N.Y. Penal Law § 150.10, Plaintiff has "lost his home and suffered extreme humiliation, ridicule, scorn and embarrassment" and will "continue to suffer for the rest of his lifetime from mental distress, humiliation, embarrassment, and defamation of his character and reputation."[1]  (Am. Compl.

---

[1]     Plaintiff is proceeding <u>pro se</u> and he alleges that he is "a duly admitted attorney in a state other than New York."  (Am. Compl. ¶ 1.)

¶ 86.)  Plaintiff asserts claims under 42 U.S.C. § 1983 for "false arrest, unlawful imprisonment, malicious prosecution, and abuse of process."  (Am. Compl. ¶ 55.)

On or about January 6, 2003, Plaintiff was released on his own recognizance.  (Am. Compl., Ex. 86.)  On or about January 31, 2003, the charges against Plaintiff were reduced to third-degree criminal trespass (a class B misdemeanor), in violation of N.Y. Penal Law § 140.10.  On or about April 16, 2003, these charges were dismissed, pursuant to New York's speedy trial statute.  (Am. Compl., Ex. 86–87); N.Y.C.P.L. 30.30.

On or about August 14, 2006, Defendants Leichter and Mercer Square were dismissed from this action pursuant to a stipulation so ordered by the Court.  (See So Ordered Stipulation of Discontinuance With Prejudice, dated August 14, 2006.)  On the same date, Defendant McGerald was also dismissed from the action pursuant to a stipulation so ordered by the Court.  (See Stipulation of Dismissal, dated August 14, 2006.)  At a conference held on September 6, 2006, the Court dismissed Plaintiff's claims against all Defendants who had not been served with the Amended Complaint, i.e., BJ One West 3rd Inc., Nana Zena Inc., and Veronica and Mickey Inc.  (See Transcript of Proceedings, dated September 6, 2006 ("Tr."), at 2-3.)

On or about October 24, 2006, Defendants Dunn, Raymond Kelly, and the City (collectively, "City Defendants"), joined by Defendants Callahan and Michael Kelly, moved to dismiss the Amended Complaint  pursuant to Federal Rule of Civil Procedure 12(c) ("Defendants' Motion").  (See Defendants City of New York, Commissioner Raymond W. Kelly & P.O. Martin Dunn's Memorandum of Law in Support of Their Motion to Dismiss, dated Oct. 24, 2006 ("Defendants' Memorandum"); see also Affirmation of Mark D. Herman, dated October 19, 2006 ("Herman Affidavit"), ¶ 3.)  These Defendants argue that:  (A) Plaintiff's § 1983 false arrest claim is time-barred because Plaintiff "had [three years] until December 30,

2005 to timely file" his claim but "did not file . . . until February 6, 2006"; (B) Plaintiff's § 1983

false arrest claim fails because "probable cause clearly existed to arrest [P]laintiff"; (C) "the

independent determination to prosecute [P]laintiff severed the chain of causation"; (D) Plaintiff's

abuse of process claim fails because the Amended Complaint is "devoid of any allegations that

defendant Dunn did anything after the [criminal] complaint was drawn up," and "there was

probable cause to arrest"; (E) Plaintiff's § 1983 claims against the City fail because Plaintiff

"cannot possibly show that any of the alleged policies he identified were the moving force

behind any alleged constitutional violations"; (F) Plaintiff's § 1983 claims against Raymond

Kelly fail because the Amended Complaint "does not allege that [Raymond] Kelly had any

involvement in any of the events . . ."; and (G) Plaintiff's § 1983 claims against Dunn fail

because Dunn "is entitled to qualified immunity."  (Def. Mem. at 5, 7, 9–12, 16.)

        On or about December 22, 2006, Plaintiff filed an opposition to Defendants' Motion,

arguing that:  (A) "even though the docket sheet stated that [Plaintiff's] complaint was filed on

February 6, 2006, it was received by the Pro Se Office within the 3-[years] limitation of the

12/30/02 incident," and "the claim for false arrest did not accrue until the prosecution ended

favorably, i.e., 4/16/03"; (B) "the arrest was made without probable cause as a result of a

conspiracy between City [D]efendants and [D]efendants Michael [Kelly] and [Callahan] as well

as others who are not part of this [M]otion"; (C) Dunn "prepared a false accusatory instrument

and initiated [Plaintiff's] prosecution predicated on this manufactured statement and planted

evidence"; (D) there was "lack of probable cause," and "the arrest was done to retaliate"; (E) the

City has "a policy of ignoring people's complaints to the police about being mistreated,

assaulted, set up, etc., by the business employees/owners and siding with the business

owners/employees in arresting people . . . without probable cause," an "intentional policy of not

building [a] sufficient amount of public bathrooms," and "a policy of discriminating against me being a Jew with a foreign accent"; (F) Raymond Kelly "allow[ed] . . . a policy or custom that sanctioned conduct amounting to a constitutional violation to continue"; and (G) "[t]here is no qualified immunity defense for individuals [such as Dunn] . . . sued in their official capacities." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amend. Complaint ("Pl. Mem."), at 5–6, 8, 11, 17, 19–22, 24–25; Plaintiff's Letter to the Court, dated February 1, 2007, at 4.[2])  Plaintiff further contends that Defendants' Motion "does not address [Plaintiff's] claims for conspiracy, retaliation, discrimination, fabrication of evidence, and equitable relief as well as [Plaintiff's] remaining defendants," i.e., Defendants Meherez, Treston, Pamela's Cafe Inc., and Pamela's Canteena.[3]  (Pl. Mem. at 25.)

On or about January 29, 2007, the City Defendants filed a reply, in which Callahan and Michael Kelly again joined.  (Defendants City of New York, Dunn and Raymond Kelly's Reply Memorandum of Law in Further Support of their Motion for Judgment on the Pleadings ("Def. Reply"); Reply Affidavit of Mark Herman, dated January 22, 2007 ("Herman Reply Aff."), ¶ 6.)

**For the reasons set forth below, Defendants' Motion is granted in part and denied in part.**

## II.   Standard of Review

"A motion under Rule 12(c) for judgment on the pleadings is evaluated under the same standard as one pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim." Young-Flynn v. Kelly, 234 F.R.D. 70, 73 (S.D.N.Y. 2006) (citing DeMuria v. Hawkes, 328 F.3d

---

[2]      The Court has reviewed Plaintiff's letter of February 1, 2007 as part of his opposition to Defendants' Motion.
[3]      The S.D.N.Y. docket indicates that the Amended Complaint was served upon Defendants Pamela's Cafe Inc. and Pamela's Canteena on July 26, 2006, and upon Defendants Treston and Meherez on July 21, 2006 and August 8, 2006, respectively.

704, 706 n.1 (2d Cir. 2003)).  "Thus, the Court must accept as true the factual allegations stated

in the complaint and any document incorporated to it by reference or upon which it heavily relies

in the formulation of the pleadings, as well as draw all reasonable inferences in plaintiff's favor."

Id. (citing Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir.2000)).  "Dismissal of a

complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is

proper where 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of

his claim that would entitle him to relief.'" Qader v. New York, 396 F. Supp. 2d 466,

469 (S.D.N.Y. 2005) (quoting Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999));

see also Posr v. Court Officer Shield No. 207, 180 F.3d 409, 413–14 (2d Cir. 1999).

    "Because Plaintiff is acting pro se, the Court must 'read his supporting papers liberally,

and . . . interpret them to raise the strongest arguments that they suggest.'" Quiles v. City of

New York, No. 01 Civ. 10934, 2003 WL 21961008, at *3 (S.D.N.Y. Aug. 13, 2003) (quoting

Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  "However, 'legal conclusions, deductions,

or opinions couched as factual allegations are not given a presumption of truthfulness.'" Black

v. Town of Harrison, No. 02 Civ. 2097, 2002 WL 31002824, at *3 (S.D.N.Y. Sept. 5, 2002)

(quoting L'Europeenne de Banque v. La Republica de Venez., 700 F. Supp. 114, 122 ( (S.D.N.Y.

1988)).

    "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions

will not do." Bell Atlantic v. Twombly, No. 05-1126, 2007 WL 1461066, at *8 (U.S. May 21,

2007) (internal quotation omitted).

III.    **Analysis**

(A)    **Time Bar**

Defendants argue that Plaintiff's claims are time-barred because the statute of limitations is three years.  That is, the alleged unlawful arrest took place on December 30, 2002, while "[P]laintiff did not file his Complaint until February 6, 2006." [4]  (Def. Mem. at 5.)  Defendants Callahan and Michael Kelly argue that Plaintiff's claims against them are time-barred for the additional reason that "neither [Michael Kelly] nor [Callahan] were listed as Defendants" in the Original Complaint; rather, "they were mentioned for the first time in the Amended Complaint, which was not filed until April 2006 and served during June 2006."  (Herman Reply Aff. ¶ 2.)  Plaintiff contends that "this action was [timely] commenced on December 29, 2005 when the Pro Se Office received [Plaintiff's] [C]omplaint."  (Pl. Mem. at 6.)  Plaintiff contends further that Defendant Michael Kelly is actually "an alleged police informant, Carlos Gonzalez" (whom Plaintiff named as a Defendant in the Original Complaint), and Plaintiff states that because of "a conspiracy to falsely name [D]efendant P.O. Dunn's informant as Carlos Gonzalez," his claims against Michael Kelly "relate[] back to the date of the [O]riginal [C]omplaint."  (Am. Compl. ¶ 4; Pl. Mem. at 9–10.)

"For § 1983 actions arising in New York, the statute of limitations is three years." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).  "A pro se action is deemed commenced when it is received by the court as opposed to when it is formally filed."  Gil v. Vogilano, 131 F. Supp. 2d 486, 493 (S.D.N.Y. 2001).  "Under Federal Rule of Civil Procedure 15(c), when an attempt is made to bring in a new party [after the statute of limitations has run], the date of the

---

[4]       On or about December 29, 2005, Plaintiff submitted his complaint ("Original Complaint") to the Pro Se Office of the Southern District of New York ("Pro Se Office").  The Original Complaint was filed on or about February 6, 2006, (see Def. Mem. at 5); it did not name Callahan, Leichter, or Michael Kelly as Defendants.

amendment adding that party will relate back to the date of the original complaint only when: (1) the claim arises out of the same conduct originally pleaded and (2) within (ordinarily) 120 days of the original filing date, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."  Polite v. Town of Clarkstown, 198 F.R.D. 610, 611 (S.D.N.Y. 2001); see also Noguera v. Hasty, No. 99 Civ. 8786, 2000 WL 1011563, at *14 (S.D.N.Y. July 21, 2000).  In short, Rule 15(c) sets forth a "requirement . . . that the new parties must be served, or otherwise provided adequate notice of the litigation, within 120 days of the complaint."  Young-Flynn v. Kelly, 234 F.R.D. 70, 74–75 (S.D.N.Y. 2006).  Furthermore, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."  Barrow v. Wethersfield Police Dept., 66 F.3d 466, 470 (2d Cir. 1995).

Plaintiff's § 1983 claims are not time-barred as against those remaining Defendants who were named in the Original Complaint because it was received by the Southern District of New York Pro Se Office on December 29, 2005, one day before the expiration of the three-year statutory period.  (See Pl. Mem. at 6); Salahuddin v. Harris, 657 F.Supp. 369, 373 n.3 (S.D.N.Y. 1987) ("Where a plaintiff acts pro se and sends his complaint to the court, and the complaint is not filed until a later date due to consideration of plaintiff's application to proceed in forma pauperis, the action is deemed commenced for purposes of the statute of limitations upon receipt by the court of plaintiff's complaint, and not when it is filed").

Callahan and Michael Kelly, who were not named as Defendants until Plaintiff filed his

Amended Complaint on April 7, 2006, and who were not served until on or about June 27 and

June 28, 2006, respectively, are dismissed from the case as they were not timely served (i.e.,

before April 28, 2006), and there are no factual allegations from which to conclude that they had

notice of the original action or knew or should have known that, but for a mistake concerning the

identity of the proper party, the action would have been brought against them.  See Young-Flynn,

234 F.R.D. at 75 (where "first notice of the claims . . . did not occur" within 120 days of original

complaint, "an amended complaint adding new defendants cannot relate back if the newly-added

defendants were not named originally because the plaintiff did not know their identities").[5]

**(B)      False Arrest**

Defendants argue that Plaintiff has no false arrest claim because "probable cause clearly

existed to arrest [P]laintiff."  (Def. Mem. at 7.)  Plaintiff responds that "officers of a reasonable

competence would not believe that probable cause existed to arrest me."  (Pl. Mem. at 15.)

Plaintiff also alleges (and Defendants do not dispute) that the arrest of Plaintiff was "committed

with the intention to restrain and confine the Plaintiff without his consent," and that "Plaintiff

was at all times conscious of his confinement." [6]  (Am. Compl. ¶ 67.)

"The elements of false arrest . . . under § 1983 are substantially the same as the elements

under New York law."  Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003) (internal

---

[5]      Plaintiff's allegation that Michael Kelly is, in fact, Carlos Gonzalez and his vague and
conclusory allegations of a conspiracy among Defendants to conceal the identity of the
complaining witness are insufficient.  See Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977)
("complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive
a person of constitutional rights will be dismissed") (internal quotation omitted); see also Am.
Compl. ¶ 4, Ex. 8, 10–19, 21, 30, 34).

[6]      The Amended Complaint purports also to assert a § 1983 claim for "unlawful
imprisonment."  "[U]nder New York law, the torts of false arrest and false imprisonment are
synonymous."  Fincher v. County of Westchester, 979 F. Supp. 989, 998 (S.D.N.Y. 1997)).

quotation marks omitted).  "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  "An officer has probable cause to arrest when a prudent person in possession of the facts the officer knew of at the time of the arrest would believe the suspect had committed and/or was committing a criminal act."  Richards v. City of New York,  433 F. Supp. 2d 404, 419 (S.D.N.Y. 2006). "Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it."  Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).  Those facts "need not reach the level of evidence necessary to support a conviction . . . but [they] must constitute more than rumor, suspicion, or even a strong reason to suspect."  United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983); see also United States v. Pena, 51 F. Supp. 2d 367, 371 (W.D.N.Y. 1999) ("there must be 'more than momentary, random, or apparently innocent association . . . [with] criminal activity,' in order to find probable cause").

This aspect of Defendants' Motion turns on the element of probable cause which is usually a question of fact following discovery.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers"); Bullard v. City of New York, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) ("In contrast, '[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature

. . . the existence . . . of probable cause is to be decided by the jury'") (quoting <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2d Cir. 1997)).

It is difficult to ascertain the facts surrounding Plaintiff's arrest at this point.  It appears that, at the time of Plaintiff's arrest, the arresting officers may have been informed by a witness that Plaintiff had been "standing outside 684 Broadway" where a fire took place, and that "when [Plaintiff] saw [the witness] looking at him, [Plaintiff] ran away."  (Am. Compl., Ex. 1.)  And, the officers appear to have been informed by Plaintiff "that he didn't have any [matches], that he didn't throw any matches away," and that his hands were wet.  (Am. Compl. ¶ 42); <u>see also</u> <u>Warren v. Dwyer</u>, 906 F.2d 70, 73 (2d Cir. 1990) ("For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure"); <u>Woodford v. Comm. Action Agency of Greene Co., Inc.</u>, 239 F.3d 517, 526 (2d Cir. 2001).  The Court will give the parties the opportunity to flesh out the facts and circumstances of Plaintiff's arrest.  <u>See Williams v. City of Mount Vernon</u>, 428 F. Supp. 2d 146, 156 (S.D.N.Y. 2006).  "While the facts that may be established through discovery might lead to the conclusion that the individual [D]efendants possessed actual or arguable probable cause to arrest Plaintiff and commence his prosecution on certain crimes, that determination will have to await a summary judgment motion or trial." <u>Bostic v. City of Binghamton</u>, No. 06 Civ. 540, 2006 WL 2927145, at *4 (N.D.N.Y. Oct. 11, 2006).

**(C)     Malicious Prosecution**

Defendants argue that, because the Borough of Manhattan District Attorney, not Dunn, "determined which charges would be brought against [Plaintiff] and decided to pursue the case beyond . . . arraignment," the prosecution of Plaintiff "was not proximately caused by the actions

of [Dunn]." (Def. Mem. at 9–10.) Plaintiff contends that Dunn "prepared a false accusatory instrument and initiated [Plaintiff's] prosecution predicated on this manufactured statement and planted evidence (allegedly burnt menus)." (Pl. Mem. at 18.)

"The elements of malicious prosecution under § 1983 are substantially the same as the elements under New York law." Boyd, 336 F.3d at 75 (internal quotation omitted). "Under New York law, the elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Savino, 331 F.3d at 72 (internal quotation omitted).

Plaintiff has satisfactorily alleged that the criminal proceedings against him were terminated in his favor, see Golub v. City of New York, 334 F. Supp. 2d 399, 407 (S.D.N.Y. 2004); and that probable cause is an issue of fact (for the reasons set forth at pp. 8–10 above). Less clear is whether Plaintiff has satisfactorily pleaded the fourth element (i.e., malice) merely by alleging that there was no probable cause and that the arresting officers "act[ed] in bad faith and with prejudice against [Plaintiff] because they were upset that [Plaintiff] exercised his freedom of speech and complained to them." (Pl. Mem. at 21–22); see also Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) ("Malice means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served") (internal quotation omitted); Babi-Ali v. City of New York, 979 F. Supp. 268, 277 (S.D.N.Y. 1997) ("actual malice can be inferred from a lack of probable cause for the initiation of criminal proceedings"); Hilfiger v. Bradlees, Inc., No. 99 Civ. 4677, 2002 WL 737477, at *10 (S.D.N.Y. April 25, 2002) ("Pursuant to Federal Rule of Civil Procedure 9(b), malice may be averred generally" in malicious prosecution claim).

In any event, Plaintiff's malicious prosecution claim fails because he has not satisfied the first element of his claim, namely, the initiation of a prosecution by Defendant(s).[7]  Although Plaintiff has charged "that [Dunn] . . . swore to and signed a felony complaint," Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382 (S.D.N.Y. 2005), District Attorney McGerald appears to have made the decision to prosecute Plaintiff, (Am. Compl., Ex. 86–87), and the Amended Complaint offers no non-speculative, non-conclusory allegations sufficient to support the conclusion that Dunn misled or pressured the prosecutor.  (Am. Compl., Ex. 1.)  The District Attorney's "intervening" decision to pursue a criminal charge against Plaintiff broke the chain of causation between the alleged unlawful arrest and Plaintiff's subsequent prosecution.  See White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988) ("The exercise of independent judgment by the public prosecutor and his active role in initiating criminal prosecutions may decrease the likelihood that a complaining witness will be considered to have 'caused' or 'procured' the prosecution, thus defeating grounds for liability under this initial prong"); see also Townes, 176 F.3d at 147.

**(D)     Abuse of Process**

Defendants argue that Plaintiff has failed to offer "any allegations that [D]efendant Dunn did anything after the [criminal] complaint was drawn up," and "[P]laintiff has failed to identify any collateral objective by Defendant Dunn."  (Reply Mem. at 8–9.)  Plaintiff counters that "officers who facilitate an arrest and prosecution may be liable for abuse of process," and "the arrest was done to retaliate."  (Pl. Mem. at 21–22.)

---

[7]     "[T]he chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment . . . . At least that is so in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment."  Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999).

"Malicious abuse of criminal process also supports liability under § 1983."  Savino, 331 F.3d at 76–77.  "In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance of or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).

Plaintiff may be able to satisfy the first element by alleging that Defendants initiated Plaintiff's criminal proceeding by arresting him, and he may satisfy the second element by alleging that there are issues of fact surrounding whether Defendants initiated the prosecution without probable cause and "in bad faith and with prejudice against [Plaintiff]."  (Am. Compl. ¶¶ 43, 75); see Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally"); Cook, 41 F.3d at 80; Perry v. Manocherian, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) ("action was brought maliciously to coerce a settlement and to create bad publicity").  The Amended Complaint, however, fails to offer any allegations identifying any non-speculative, non-conclusory collateral objective sought to be achieved through Plaintiff's arrest and prosecution.  See Lopez v. City of New York, 901 F.Supp. 684, 691 (S.D.N.Y. 1995) ("The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim") (emphasis in original); Duamutef v. Morris, 956 F. Supp. 1112, 1119 (S.D.N.Y. 1997) ("allege[d] retaliation in wholly conclusory terms"); Jovanovic v. City of New York, No. 04 Civ. 8437, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) ("allege[d] a collateral objective only in the most conclusory fashion"); Perry, 675 F. Supp. at 1429 ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process").

**(E)    Municipal Liability**

Defendants argue that "Plaintiff does no more than assert a simple claim against municipal and private defendants collectively, sounding in respondeat superior, which is patently insufficient to state a claim for municipal liability."  (Def. Mem. at 15–16.)  Plaintiff argues that "the City has an inhumane, 'deliberately indifferent' . . . policy of ignoring people's complaints to the police about being mistreated, assaulted, set up, etc. by the business employees/owners and siding with the business owners/employees in arresting people (like it happened to me) without probable cause (although the policemen are doing everything to find/manufacture the probable causes to arrest [and] prosecute," and that the City "requires the police to ignore people's complaints and needs and to pretend that the police(men) don't understand/see the underlying reasons for fights for the bathrooms.  [The City] failed to train its officers to recognize the problem and to respond to such situations in a humane way."  (Pl. Mem. at 24–25.)  Additionally, Plaintiff argues that, "[i]n the alternative, [the City] has a policy of discriminating against me being a Jew with a foreign accent."  (Pl. Mem. at 25.)

"[L]iability under § 1983 may not be predicated upon a theory of respondeat superior or vicarious liability."  Dove v. Fordham Univ., 56 F. Supp. 2d 330, 336 (S.D.N.Y. 1999) (citing City of Canton, Ohio v. Harris, 489 U.S. 378 (1989)).  "Rather, it is only when the municipality itself commits the misdeed, that is, 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'"  Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to

raise an inference of the existence of a custom or policy." <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993) ("the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury"); <u>see also</u> <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-84 (1986) ("municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives").  Furthermore, "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" <u>Harris</u>, 489 U.S. at 389 (quoting <u>Monell</u>, 436 U.S. at 694).

Even when liberally construed, Plaintiff's sweeping, speculative, and conclusory allegations are insufficient satisfactorily to allege the existence of a City policy that proximately caused Plaintiff's injuries.  <u>Dwares</u>, 985 F.2d at 100; <u>Ricciuti v. N.Y.C. Transit Authority</u>, 941 F.2d 119, 123 (2d Cir. 1991); <u>Perez v. County of Westchester</u>, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (where "complaint does not include any facts demonstrating the existence of a policy or custom"); <u>Fanelli v. Town of Harrison</u>, 46 F. Supp. 2d 254, 259 (S.D.N.Y. 1999) ("plaintiff's boilerplate allegation that the [municipal defendant] failed to train and supervise its police officers . . . is insufficient to sustain the action"); <u>Dewick v. Village of Penn Yan</u>, 972 F. Supp. 166, 170 (W.D.N.Y. 1997) (where plaintiffs "failed to allege any facts supporting the existence of a municipal policy that resulted in a [§ 1983] violation").

**(F)    Supervisory Liability**

Defendants argue that the Amended Complaint "does not allege that [Raymond] Kelly had any involvement in any of the events set forth in the complaint."  (Def. Mem. at 11.) Plaintiff counters that Raymond Kelly "allow[ed] . . . a policy or custom that sanctioned conduct

amounting to a constitutional violation to continue." (Plaintiff's Letter to the Court, dated February 1, 2007.)

"In a § 1983 action, a supervisor cannot be held liable for his subordinates under the doctrine of respondeat superior." Jones v. Goord, 435 F. Supp. 2d 221, 265 (S.D.N.Y. 2006). Rather, a § 1983 plaintiff "must show that the defendant had some 'personal involvement' with the alleged unconstitutional conduct." Id. (quoting Hernandez v. Keane, 341 F.3d 137, 144–45 (2d Cir. 2003)).

The Amended Complaint offers no factual allegations, as opposed to sweeping conclusions, concerning Commissioner Raymond Kelly. (See Am. Compl. ¶ 64.) As such, the allegations are insufficient to support a claim under § 1983. See Young-Flynn, 234 F.R.D. at 75 (complaint "alleged no new facts suggesting any direct or personal involvement by [Commissioner Raymond] Kelly in the events relating to [Plaintiff's] arrest"); Dove, 56 F. Supp. 2d at 336–37 ("[Plaintiff] cannot maintain a § 1983 claim against the [New York City Police] Commissioner on the theory that he as supervisor of the entire police department is vicariously liable for any alleged constitutional violation that occurs in that Department"); Washington Square Post No. 1212 American Legion v. City of New York, 720 F. Supp. 337, 346–47 (S.D.N.Y. 1989) ("where, as here, the complaint is devoid of factual allegations showing how the [Commissioner's] conduct caused the alleged constitutional violation, it is insufficient").

**(G)     Qualified Immunity**

Defendants argue that "[a]ny claims against Dunn must fail as he is entitled to qualified immunity." (Def. Mem. at 12.) Plaintiff contends that "the [D]efendants' [M]otion on this basis is premature, because it would require the Court to make factual determinations impermissible under the liberal pleading rules of [Rule] 12(b)(6)." (Pl. Mem. at 22.)

"An officer is shielded by qualified immunity from a false arrest claim when '(1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.'" Richards v. City of New York, 433 F. Supp. 2d 404, 419 (S.D.N.Y. 2006) (quoting Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)).  When considering the defense of qualified immunity on a motion to dismiss under Rule 12(b)(6), "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."  McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (internal quotation omitted).

Because the qualified immunity defense necessarily involves a fact-specific inquiry, "[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to [Rule] 12(b)(6)."  Walker v. Mendoza, No. 00 Civ. 93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000); see also Middleton v. City of New York, No. 04 Civ. 1304, 2006 WL 1720400, at *12 (E.D.N.Y. June 19, 2006) (where "there is insufficient information in the complaint from which to determine what facts the police officers had available to them from the complainant at the time of the arrest"); Levine v. Lawrence, No. 03 Civ. 1694, 2005 WL 1412143, at * 10 (E.D.N.Y. June 15, 2005) ("Because this defense similarly turns on facts not apparent from the face of [the] complaint, dismissal on the basis of qualified immunity is premature").

**(H)    Claims Not Asserted In Amended Complaint**

Plaintiff argues that Defendants' Motion "does not address [Plaintiff's] claims for conspiracy, retaliation, discrimination, fabrication of evidence, and equitable relief as well as my

17

remaining defendants."  (Pl. Mem. at 25.)  In their Reply, Defendants counter that "[P]laintiff has

made only vague and conclusory allegations of conspiracy."[8]  (Def. Reply at 7, 9.)

      "It is well-settled that where the complaint names a defendant in the caption but contains

no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to

dismiss the complaint in regard to that defendant should be granted."  <u>Dove</u>, 56 F. Supp. 2d at

335 (internal quotations omitted); <u>see also</u> <u>Antidote Intern. Films, Inc. v. Bloomsbury Pub., PLC</u>,

467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) ("a district court may dismiss claims <u>sua sponte</u> for

failure to state a claim, at least so long as the plaintiff had notice and an opportunity to be heard

on the issue").  Also, "[n]ew claims not specifically asserted in the complaint may not be

considered by courts when deciding a motion to dismiss."  <u>Lerner v. Forster</u>, 240 F. Supp. 2d

233, 241 (E.D.N.Y. 2003); <u>see also</u> <u>O'Brien v. National Property Analysts Partners</u>, 719 F. Supp.

222, 229 (S.D.N.Y. 1989) ("it is axiomatic that the Complaint cannot be amended by the briefs

in opposition to a motion to dismiss"); <u>Southwick Clothing LLC v. GFT (USA) Corp.</u>, No. 99

Civ. 10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be

amended merely by raising new facts and theories in plaintiffs' opposition papers").  Thus,

Plaintiff's claims against Meherez, Treston, Pamela's Cafe Inc., and Pamela's Canteena should

be dismissed.  See <u>Dove</u>, 56 F. Supp. 2d at 335.

      Moreover, Plaintiff's allegations against Meherez and Treston are that they "failed to pay

mortgage [sic] on their house"; that Meherez "stopped paying loan [sic] of Defendant Pamela's

Cafe"; and that "in order to avoid judgment from this litigation," Meherez and "possibly"

Treston acted "in collusion" with other Defendants "to start a new business," and that "some of

---

[8]     Neither Defendants' Memorandum nor their Reply makes any mention of the remaining
Defendants who did not join in the Motion To Dismiss (<u>i.e.</u>, Defendants Meherez, Treston,
Pamela's Cafe Inc., and Pamela's Canteena).

the business[es], e.g., Defendant Pamela's Canteena, are unlicensed and apparently without

recorded leases."  (Am. Compl. ¶¶ 51–52, 60.)  No non-conclusory factual allegations of any

conduct by these Defendants that violated the law or injured Plaintiff are presented, and,

therefore, Plaintiff's claims against them should be dismissed for that reason as well.  See Dove,

56 F. Supp. 2d at 35; Tornheim v. Eason, 348 F.Supp.2d 209, 215–16 (S.D.N.Y. 2004) (noting

that the court "has discretion to dismiss claims sua sponte" and dismissing § 1983 claim sua

sponte as against defendant "private citizen" who "participated in a purely private transaction");

Sonds v. St. Barnabas Hosp. Correctional Health Svces., 151 F. Supp. 2d 303, 313 (S.D.N.Y.

2001) (dismissing § 1983 claims sua sponte as against defendants who did not join in motion to

dismiss where "plaintiff has been heard -- in his responses to the existing motion"); Evans v.

Nassau County, 184 F. Supp. 2d 238, 243 (E.D.N.Y. 2002) (dismissing § 1983 false arrest claims

that "lack[ed] basis in law" as against defendants who did not join in motion to dismiss).

In addition, neither the Original Complaint nor the Amended Complaint makes any

factually based non-conclusory claims for "conspiracy, retaliation, discrimination, fabrication of

evidence, and equitable relief."  Rather, the first mention of such purported claims appears in

Plaintiff's Memorandum.  (See Pl. Mem. at 25.)  Accordingly, Plaintiff's claims for conspiracy,

retaliation, discrimination, fabrication of evidence, and equitable relief are dismissed.  See

Lerner, 240 F. Supp. 2d at 241 (dismissing "several theories" that "Plaintiff improperly raises . . .

de novo in her Memorandum of Law in Opposition to Defendants' 12(b)(6) motion"); see also

Bell Atlantic, 2007 WL 1461066, at *8 ("Factual allegations must be enough to raise a right to

relief above the speculative level").

IV.   **Conclusion and Order**

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's false arrest claim against Dunn may proceed. Plaintiff's other claims against the City, Raymond Kelly, Michael Kelly, Callahan, Dunn, Meherez, Treston, Pamela's Cafe Inc., and Pamela's Canteena are dismissed.

The parties and counsel are directed to appear at a status/settlement conference with the Court on June 12, at 3:00 p.m., in Courtroom 9A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**

Dated: New York, New York
       May 24, 2007

RICHARD M. BERMAN, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/24/07